IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL McANDREW GRAHAM, III :
:
v. : CIVIL ACTION NO. CCB-12-2975
:
OFFICER TOBY KING & :
WARDEN PATRICIA GOINS-JOHNSON :

## MEMORANDUM

Self-represented plaintiff Paul Graham, a Maryland Division of Corrections ("DOC") prisoner incarcerated at Patuxent Institution, seeks money damages and the firing of Officer Toby King. Plaintiff alleges that on August 8, 2012, King punched him several times in the head while he was shackled to an infirmary bed during an epileptic seizure. Plaintiff also claims that on September 19, 2012, Warden Patricia Goins-Johnson cancelled his Hagerstown court appearance after he suffered another epileptic seizure.[1] (Compl., ECF No. 1; Am. Compl., ECF No. 3; ECF No. 9 at 4.)

Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment, (ECF No. 17), which plaintiff opposes,[2] (ECF No. 18). Pursuant to Local Rule 105.6 (D. Md. 2011), no hearing is needed to resolve plaintiff's claims of excessive use of force and denial of access to the courts.

---

[1] In his amended complaint, plaintiff seeks to have Warden Goins-Johnson fired, alleging that on November 19, 2012, she ordered him transported to attend a Hagerstown court appearance while he was in the throes of another seizure. (Am. Compl. at 4.) Having examined Maryland's electronic docket, the court cannot find a court appearance he may have had on November 19, 2012. It appears plaintiff may be referring to proceedings in a case related to a November 14, 2012 assault on DOC personnel. *See* Case No. 0V00080500, District Ct., Washington County. He may also be referring to proceedings in a case related to a November 2011 assault on DOJ personnel. *See* Case No. 6W00059667, District Ct., Allegany County.
Plaintiff's dissatisfaction with the judges who determined the outcome of his criminal and civil cases in the state courts, alluded to in his amended complaint, provides no basis of liability and does not require further response.
[2] Plaintiff alleged that a video recording documented the infirmary attack. (ECF No. 20 at 3.) In response to court order, (ECF No. 21), defendants state there was no video system in the Patuxent infirmary, and no video evidence exists documenting the August 8, 2012, incident. (ECF No. 22 at 1; *see also* ECF No. 17-9 at 5.)

**PRELIMINARY MATTER**

Patuxent is a specialized institution and is the only dedicated treatment facility within Maryland's Department of Public Safety and Correctional Services ("DPSCS"). As noted on Patuxent's website:[3]

> "[The] facility provides treatment to men, women and youth in its Eligible Person (EP) program through the use of remediation management that combines psychiatry, psychology, social work and custody on each team. Patuxent is also the location for a number of substance abuse treatment programs for [DOC] male and female offenders, as well as the Correctional Mental Health Center-Jessup, the [DOC's] in-patient mental health unit. [Patuxent's] Director serves as the Chief Executive Officer . . . and is assisted by three Associate Directors: the Warden who maintains responsibility for custody and security of the Institution; the Associate Director for Behavioral Sciences who manages the EP program; and the Associate Director for Psychiatry who attends to the psychiatric issues relating to the Patuxent treatment regime."

Defendants do not delineate why plaintiff is at Patuxent. Nonetheless, once the matter of a party's competency has been brought to the court's attention, it is required to consider and decide the issue. *Seibels, Bruce & Co. v. Nicke*, 168 F.R.D. 542, 543 (M.D.N.C. 1996). While Federal Rule of Civil Procedure 17(c)(2) allows the court to appoint a guardian ad litem, it does not compel it to do so, but rather grants it considerable discretion to issue an "appropriate order" to protect the interest of an unrepresented incompetent litigant.

Examination of the record shows that plaintiff has received treatment at Patuxent since at least August 1, 2012, and has been diagnosed as suffering from delusional disorder, antisocial personality disorder, epilepsy, and schizoaffective disorder. (ECF No. 17-10 at 1, 132.) Examination of Maryland's electronic docket system suggests that plaintiff's competency recently has been questioned.[4] Despite his mental health problems, plaintiff has been able to

---

[3] *See* http://www.dpscs.state.md.us/agencies/patuxent.shtml.

[4] In a criminal case filed in the Circuit Court for Allegany County, related to a November 30, 2011 assault on corrections staff, the case was left open for a time pending a psychological evaluation. *See* Maryland v. Graham, Case No. 01K13015217, Circuit Ct., Allegany County.

articulate his claims here. Given plaintiff's apparent ability, there is no requirement, under Rule 17(c)(2), for appointment of a guardian to pursue the claims presented.

## STANDARD OF REVIEW

As noted, defendants have moved to dismiss or, in the alternative, for summary judgment. "'The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "'accept[ ] as true the well-pled facts in the complaint and view[ ] them in the light most favorable to the plaintiff.'" *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) (citation omitted).

Ordinarily, a court cannot consider matters outside the pleadings or resolve fact disputes when ruling on a Rule 12(b)(6) motion. *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

This court deems it appropriate to consider the extraneous materials, as they are likely to

facilitate disposition of this case.[5] Accordingly, defendants' motion shall be treated as a motion for summary judgment.

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d

---

[5] A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d Ed. 2004). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided in this determination by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165–67. For reasons apparent herein, discovery is not required to resolve this case.

at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)) (internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Each claim shall be examined in light of this standard of review.

## EXCESSIVE USE OF FORCE

Whether force used by prison officials was excessive is determined by inquiring if force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986).

The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010). Rather, the extent of injury incurred is one factor indicative of the amount of force and whether the force was necessary in a particular situation. *Id*. at 37. But, if force is applied "'maliciously and sadistically,'" liability is not avoided simply because the prisoner had "the good fortune to escape without serious injury." *Id.* at 37-38 (citation omitted).

In his unverified complaint, plaintiff claims defendant King "punch[ed] me on the head several times after I awaken[ed]" from an epileptic seizure. (Compl. at 1.) Defendants present a different version of events, fully supported by the record.

On August 8, 2012 at approximately 10:00 am, King was called to assist a medical situation involving plaintiff. (King Decl., ECF No. 17-3, at 1.) Plaintiff's cell door was open and plaintiff was lying on his back with his feet toward the door, shaking. A nurse suggested

5

waiting until the seizure passed before taking plaintiff to the infirmary. After over an hour of waiting, the nurse concluded plaintiff was faking his seizure and could be removed from the cell. Officers picked plaintiff up, placed him on a stretcher, and took him to the infirmary. (*Id.*)

As a precaution, King cuffed plaintiff's right arm next to his waist on the stretcher. (*Id.*) The infirmary nurse brought out smelling salts (ammonia inhalant), put them under plaintiff's nose, and plaintiff moved his head away. The nurse stated that if plaintiff were having a seizure he would not have reacted to the salt pack. (*Id.*)

When the nurse indicated she would take blood, plaintiff suddenly awoke and said "You ain't sticking me with no motherfucking needles." (*Id.*) Plaintiff began moving on the stretcher, yelling and raising his head. King tried to cuff plaintiff's left hand to his side, and plaintiff sat up and kicked King in the face and chest. (*Id.*) King held himself over plaintiff's legs to prevent being kicked further. After more officers arrived, they took over getting plaintiff under control. King stepped away to check for injuries to himself and damage to his glasses. He had no further involvement with plaintiff and avers that he did not strike him. (*Id.* at 2.)

Sergeant Taylor, assigned to the utility squad, also responded to the first call for assistance. (Taylor Decl., ECF No 17-4, at 1.) Taylor saw plaintiff lying on the floor suffering what appeared to be a seizure. Thereafter, the nurse on the scene instructed that plaintiff be taken to the infirmary. (*Id.*) King and another correctional officer, Dennis, placed plaintiff on the stretcher, and they and Taylor took him to the infirmary. (*Id.*) Taylor observed plaintiff shake, then stop to look around before shaking again. (*Id.*)

After arriving in the infirmary, Dennis left but Taylor remained in the infirmary with plaintiff. (*Id.*) When the nurse indicated she would draw blood, Taylor observed plaintiff become combative, "kicking [King] in the head, drawing blood and knocking his glasses off."

6

(*Id*.) A call for "Officer needs Assistance" was immediately made. Taylor and the responding officers restrained plaintiff and brought the situation under control. Taylor remained on the scene until the medical assessment was completed and plaintiff was returned to his cell. Taylor states King did not strike plaintiff while in Taylor's presence. (*Id*.)

Sergeant Dennis recalls that on or about August 8, 2012, he, along with Officer King, responded to a call for assistance. (Dennis Decl., ECF No. 17-5, at 1.) Dennis saw plaintiff lying on the floor having what appeared to be a seizure. After approximately 20 minutes, Taylor arrived inquiring about the status of the assistance call. Approximately 40-45 minutes after the initial call for assistance, the nurse on the scene gave the instruction to take plaintiff to the infirmary. King and Dennis placed plaintiff on the stretcher and he was taken to the dispensary. (*Id*.) During the transport, plaintiff would shake, then periodically stop to look around, then begin shaking again. (*Id*.) As he was leaving the infirmary, Dennis heard the nurse state that she was going to draw blood. Almost immediately thereafter a call for "Officer needs Assistance" was made, and Dennis returned to the infirmary where he observed plaintiff swinging at the nurse and kicking with his feet. Dennis held down plaintiff's abdomen and right arm. Once control had been established, Dennis remained in the infirmary until plaintiff was returned to a cell. Dennis did not see King strike plaintiff. (*Id*.)

Correctional Officers Green, Fagbemi and Owens assisted in restraining plaintiff after he became combative. (Owens Decl., ECF No. 17-6, at 1; Fagbemi Decl., ECF No. 17-7, at 1; Green Decl., ECF No. 17-8, at 1.) None saw King strike Graham. (*Id*.)

The August 8, 2012, incident was investigated and a Use of Force report made. (ECF No. 17-9 at 5-6.) Warden Goins-Johnson determined that the use of force was proper under the "Use of Force continuum." (*Id*. at 6.)

Medical staff reported that there was no indication of seizure activity and no seizure activity was expressly noted. (ECF No. 17-10 at 115-116.) Plaintiff complained of an injury to his genitals but medical staff expressly noted no such injuries. (ECF No. 17-9 at 15; ECF No. 17-10 at 113-121.) Plaintiff's August 8, 2012, physical examination contains no reference to trauma of any nature.[6] (ECF No. 17-10 at 118-119.)

The uncontroverted evidence and affidavits suggest that King properly perceived a threat based on plaintiff's faking of a seizure and lashing out at correctional and medical staff, that minimal force was used to quell a disturbance initiated by plaintiff, that plaintif sustained at most minimal injury of a subjective nature, and that force ended once discipline and order were restored. The Eighth Amendment requires nothing more. Defendant King is entitled to summary judgment on this claim.

## ACCESS TO THE COURTS

Prisoners have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Plaintiff claims that defendant Goins-Johnson cancelled his trip for a court appearance on two occasions and on November 19, 2012 forced him to attend court even though he was recovering from a seizure.[7] (Am. Compl. at 3-4; ECF No. 9 at 4.)

Defendant Goins-Johnson avers that plaintiff was transferred to Jessup Correctional Institution's Medical Isolation Unit on September 12, 2012, and that his court appearance, scheduled for September 14, 2012, was cancelled.[8] (Goins-Johnson Decl., ECF No. 17-11, at ¶¶ 1-3, 5; ECF No. 17-12 at 2.) Thus, Goins-Johnson was not responsible for transporting plaintiff

---

[6] Plaintiff now claims his tooth was blackened and damaged during the incident. (ECF No. 19 at 3.) The claim is not supported in the record; plaintiff did not complain of injury to his tooth immediately after the incident. (ECF No. 17-9 at 14-15.) In fact, defendant King sustained injury as a result of plaintiff's actions. (Taylor Decl. at 1.)

[7] In his opposition response, plaintiff claims that in April of 2013, a psychologist barred him access to the telephone to make a legal call. (ECF No. 19 at 3-4.) This claim is not at issue in the instant action and shall not be addressed here. Similarly, plaintiff's claim that a State court judge "stalked" him and charged him with failure to appear, (Am. Compl. at 5), is not before the court at this time.

[8] The reason for cancellation is not apparent, but appears to have occurred after plaintiff left Patuxent.

for that court appearance which in any event was cancelled. Goins-Johnson further avers that plaintiff returned to Patuxent on September 17, 2012, and did not have a court appearance on September 19, 2012. (Goins-Johnson Decl. at ¶ 6.) She does not address the claim that plaintiff was forced to travel for a court appearance on November 19, 2012; however, even if the transportation was not proper, there is no showing that actual injury occurred. The medical record indicates plaintiff was evaluated for a "pseudo" seizure five days earlier, on November 14, 2012. (ECF No. 17-10 at 38.) Nothing in the record suggests any limitation of activities was required as a result of any illness taking place on November 14, 2012.

For these reasons, defendants are entitled to summary judgment. Their dispositive motion shall be granted and this case closed by separate order.


February 26, 2014                       /s/
Date                                Catherine C. Blake
                                         United States District Judge